# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JOSEPH VAVARNO,** | **Civil Action No.: 18cv6247** |
| *Plaintiff,* | Hon. C. Seidel, U.S.D.J. |
| *vs.* | **ANSWER TO COMPLAINT** |
| **GNS SERVICE PRO D/B/A USA SERVICE STATION & SOKOL "GENE" MJESHTIRI** | |
| *Defendants.* | |

## ANSWER TO COMPLAINT

Defendants, GNS Service Pro D/B/A USA, Services Station and Sokol "Gene" Mjeshtiri by and through their attorneys JASNE & FLORIO, L.L.P., answering Plaintiff's Complaint, set forth as follows:

## NATURE OF ACTION

1.  Answering Defendants responding to the allegations of paragraph 1: Deny the majority of the allegations of this paragraph and refer the balance of the allegations to the Affirmative Defenses, below, except admit that the Defendants did employ the Plaintiff.

## JURISDICTION AND VENUE

2.  Answering Defendants responding to the allegations of paragraph 2: Deny knowledge or information sufficient to form a belief and defer all questions of law to be determined by the Court.

3.    Answering Defendants responding to the allegations of paragraph 3: Deny knowledge or information sufficient to form a belief and defer all questions of law to the Court.

4.    Answering Defendants responding to the allegations of paragraph 4: Deny knowledge or information sufficient to form a belief and defer all questions of law to the Court.

5.    Answering Defendants responding to the allegations of paragraph 5: Admit to the extent that at all times relevant hereto, the Defendants do business in White Plains, Westchester County New York.

## THE PARTIES

6.    Answering Defendants responding to the allegations of paragraph 6: Deny knowledge or information sufficient to form a belief.

7.    Answering Defendants responding to the allegations of paragraph 7: Admit.

8.    Answering Defendants responding to the allegations of paragraph 8: Admit.

## BACKGROUND FACTS

9.    Answering Defendants responding to the allegations of paragraph 9: Deny knowledge or information sufficient to form a belief and defer all questions of law to the Court.

10.   Answering Defendants responding to the allegations of paragraph 10: Deny knowledge or information sufficient to form a belief and defer all questions of law to the Court.

11.   Answering Defendants responding to the allegations of paragraph 11: Admit.

12.   Answering Defendants responding to the allegations of paragraph 12: Admit.

13.   Answering Defendants responding to the allegations of paragraph 13: Admit.

14.   Answering Defendants responding to the allegations of paragraph 14: Admit.

15.     Answering Defendants responding to the allegations of paragraph 15: Deny knowledge or information sufficient to form a belief and defer all questions of law to the Court.

16.     Answering Defendants responding to the allegations of paragraph 16: Deny.

17.     Answering Defendants responding to the allegations of paragraph 17: Deny.

18.     Answering Defendants responding to the allegations of paragraph 18: Deny.

19.     Answering Defendants responding to the allegations of paragraph 19: Deny knowledge or information sufficient to form a belief and defer all questions of law to the Court.

20.     Answering Defendants responding to the allegations of paragraph 20: Admit.

21.     Answering Defendants responding to the allegations of paragraph 21: Admit.

22.     Answering Defendants responding to the allegations of paragraph 22: Deny knowledge or information sufficient to form a belief and defer all questions of law to the Court.

23.     Answering Defendants responding to the allegations of paragraph 23: Admit.

24.     Answering Defendants responding to the allegations of paragraph 24: Admit.

25.     Answering Defendants responding to the allegations of paragraph 25: Deny knowledge or information sufficient to form a belief and defer all questions of law to the Court.

26.     Answering Defendants responding to the allegations of paragraph 26: Admit.

27.     Answering Defendants responding to the allegations of paragraph 27: Admit.

28.     Answering Defendants responding to the allegations of paragraph 28: Deny knowledge or information sufficient to form a belief and defer all questions of law to the Court.

**AS AND FOR THE SECTION
"PLAINTIFF JOSEPH VARVARO"**

29.     Answering Defendants responding to the allegations of paragraph 29: Admit.

30.  Answering Defendants responding to the allegations of paragraph 30: Admit.

31.  Answering Defendants responding to the allegations of paragraph 31: Admit.

32.  Answering Defendants responding to the allegations of paragraph 32: Admit.

33.  Answering Defendants responding to the allegations of paragraph 33: Admit.

34.  Answering Defendants responding to the allegations of paragraph 34: Deny.

35.  Answering Defendants responding to the allegations of paragraph 35: Deny.

36.  Answering Defendants responding to the allegations of paragraph 36: Admit.

37.  Answering Defendants responding to the allegations of paragraph 37: Admit.

38.  Answering Defendants responding to the allegations of paragraph 38: Admit.

39.  Answering Defendants responding to the allegations of paragraph 39: Admit.

40.  Answering Defendants responding to the allegations of paragraph 40: Admit.

41.  Answering Defendants responding to the allegations of paragraph 41: Deny to the extent of the word "each".

42.  Answering Defendants responding to the allegations of paragraph 42: Deny as detailed within the Affirmative Defenses.

43.  Answering Defendants responding to the allegations of paragraph 43: Deny as detailed within the Affirmative Defenses.

44.  Answering Defendants responding to the allegations of paragraph 44: Deny as detailed within the Affirmative Defenses.

45.  Answering Defendants responding to the allegations of paragraph 45: Deny.

46.  Answering Defendants responding to the allegations of paragraph 46: Deny as detailed within the Affirmative Defenses.

47.     Answering Defendants responding to the allegations of paragraph 47: Deny.

48.     Answering Defendants responding to the allegations of paragraph 48: Deny.

49.     Answering Defendants responding to the allegations of paragraph 49: Admit.

50.     Answering Defendants responding to the allegations of paragraph 50: Deny.

51.     Answering Defendants responding to the allegations of paragraph 51: Admit.

52.     Answering Defendants responding to the allegations of paragraph 52: Deny.

53.     Answering Defendants responding to the allegations of paragraph 53: Deny.

54.     Answering Defendants responding to the allegations of paragraph 54: Deny as detailed within the Affirmative Defenses.

55.     Answering Defendants responding to the allegations of paragraph 55: Admit to the extent of Plaintiff complaining on the day Plaintiff quit as to a piece of metal being in the Plaintiff's eye as detailed in the Affirmative Defenses.

56.     Answering Defendants responding to the allegations of paragraph 56: Admit except to the extent of firing the Plaintiff and as to the claim the injury occurred at work as detailed in the Affirmative Defenses.

57.     Answering Defendants responding to the allegations of paragraph 57: Deny.

58.     Answering Defendants responding to the allegations of paragraph 58: Deny in accord with the Affirmative Defenses and accompanying Exhibits hereto.

59.     Answering Defendants responding to the allegations of paragraph 59: Deny in accord with the Affirmative Defenses and Exhibits hereto.

60.     Answering Defendants responding to the allegations of paragraph 60: Deny in accord with the Affirmative Defenses and Exhibits hereto.

**ANSWERING THE FIRST CAUSE OF ACTION AGAINST GNS SERVICE PRO**
(Failure to pay overtime)
(Federal)

61.    Answering Defendants responding to the allegations of paragraph 61: Defendants repeat and re-state each and every prior statement with the same force and effect as if fully set forth at length once again.

62.    Answering Defendants responding to the allegations of paragraph 62: Deny knowledge or information sufficient to form a belief and defer all questions of law to the Court.

63.    Answering Defendants responding to the allegations of paragraph 63: Deny and defer all questions of law to the Court.

64.    Answering Defendants responding to the allegations of paragraph 64: Deny and defer all questions of law to the Court.

65.    Answering Defendants responding to the allegations of paragraph 65: Deny and defer all questions of law to the Court.

66.    Answering Defendants responding to the allegations of paragraph 66: Deny and defer all questions of law to the Court.

**ANSWERING THE SECOND CAUSE OF ACTION AGAINST GNS SERVICE PRO**
(Failure to pay overtime)
(NY STATE)

67.    Answering Defendants responding to the allegations of paragraph 67: Defendants repeat and re-state each and every prior statement with the same force and effect as if fully set forth at length once again.

68.    Answering Defendants responding to the allegations of paragraph 68: Deny knowledge or information sufficient to form a belief and defer all questions of law to the Court.

69.     Answering Defendants responding to the allegations of paragraph 69: Deny and defer all questions of law to the Court.

70.     Answering Defendants responding to the allegations of paragraph 70: Deny and defer all questions of law to the Court.

71.     Answering Defendants responding to the allegations of paragraph 71: Deny and defer all questions of law to the Court.

### ANSWERING THE THIRD CAUSE OF ACTION AGAINST GNS SERVICE PRO
(Failure to pay wages)
(NY Lab. Law §191)

72.     Answering Defendants responding to the allegations of paragraph 72: Defendants repeat and re-state each and every prior statement with the same force and effect as if fully set forth at length once again.

73.     Answering Defendants responding to the allegations of paragraph 73: Deny knowledge or information sufficient to form a belief and defer all questions of law to the Court.

74.     Answering Defendants responding to the allegations of paragraph 74: Deny and defer all questions of law to the Court.

75.     Answering Defendants responding to the allegations of paragraph 75: Deny and defer all questions of law to the Court.

### ANSWERING THE FOURTH CAUSE OF ACTION AGAINST GNS SERVICE PRO
(Failure to provide wage notices)

76.     Answering Defendants responding to the allegations of paragraph 76: Defendants repeat and re-state each and every prior statement with the same force and effect as if fully set forth at length once again.

77.    Answering Defendants responding to the allegations of paragraph 77: Generally Deny
       knowledge or information sufficient to form a belief and defer all questions of law to the
       Court and further, as to all sections including the subdivisions as follow.

       i.        Deny.

       ii.       Deny.

       iii.      Deny.

       iv.       Deny.

       v.        Admit.

       vi.       Deny.

       vii.      Deny.

78.    Answering Defendants responding to the allegations of paragraph 78: Admit to the extent
       such was not furnished and defer all questions of law to be determined by the Court.

79.    Answering Defendants responding to the allegations of paragraph 79: Deny and defer all
       questions of law to be determined by the Court.

80.    Answering Defendants responding to the allegations of paragraph 80: Deny.

81.    Answering Defendants responding to the allegations of paragraph 81: Deny and defer all
       questions of law to be determined by the Court.

## ANSWERING THE FIFTH CAUSE OF ACTION AGAINST GNS SERVICE PRO
### (Retaliation - Federal)

82.    Answering Defendants responding to the allegations of paragraph 82: Defendants repeat
       and re-state each and every prior statement with the same force and effect as if fully set
       forth at length once again.

83.      Answering Defendants responding to the allegations of paragraph 83: Deny knowledge or information sufficient to form a belief and defer all questions of law to the Court.

84.      Answering Defendants responding to the allegations of paragraph 84: Deny.

85.      Answering Defendants responding to the allegations of paragraph 85: Deny and defer all questions of law to the Court.

86.      Answering Defendants responding to the allegations of paragraph 86: Deny and defer all questions of law to the Court.

## ANSWERING THE SIXTH CAUSE OF ACTION AGAINST GNS SERVICE PRO
### (Retaliation - State)

87.      Answering Defendants responding to the allegations of paragraph 87: Defendants repeat and re-state each and every prior statement with the same force and effect as if fully set forth at length once again.

88.      Answering Defendants responding to the allegations of paragraph 88: Deny knowledge or information sufficient to form a belief and defer all questions of law to the Court.

89.      Answering Defendants responding to the allegations of paragraph 89: Deny.

90.      Answering Defendants responding to the allegations of paragraph 90: Deny and defer all questions of law to the Court.

91.      Answering Defendants responding to the allegations of paragraph 91: Deny.

92.      Answering Defendants responding to the allegations of paragraph 92: Deny knowledge or information sufficient to form a belief.

## ANSWERING THE SEVENTH CAUSE OF ACTION AGAINST GNS SERVICE PRO
(Conversion - State)

93.     Answering Defendants responding to the allegations of paragraph 93: Defendants repeat and re-state each and every prior statement with the same force and effect as if fully set forth at length once again.

94.     Answering Defendants responding to the allegations of paragraph 94: Deny.

95.     Answering Defendants responding to the allegations of paragraph 95: Admit.

96.     Answering Defendants responding to the allegations of paragraph 96: Deny as detailed hereinbelow within the Counterclaim and Affirmative Defendants and Exhibits as annexed.

97.     Answering Defendants responding to the allegations of paragraph 97: Deny.

## ANSWERING THE EIGHTH CAUSE OF ACTION AGAINST GNS SERVICE PRO
(Trespass to Chattel - State)

98.     Answering Defendants responding to the allegations of paragraph 98: Defendants repeat and re-state each and every prior statement with the same force and effect as if fully set forth at length once again.

99.     Answering Defendants responding to the allegations of paragraph 99: Deny as detailed hereinbelow within the Counterclaim and Affirmative Defendants and Exhibits as annexed.

100.    Answering Defendants responding to the allegations of paragraph 100: Admit upon information and belief.

101.    Answering Defendants responding to the allegations of paragraph 101: Deny as detailed hereinbelow within the Counterclaim and Affirmative Defendants and Exhibits as

annexed.

102.   Answering Defendants responding to the allegations of paragraph 102: Deny as detailed

hereinbelow within the Counterclaim and Affirmative Defendants and Exhibits as

annexed.

### AS AND FOR DEFENDANTS' AFFIRMATIVE DEFENSES
### AS AND FOR DEFENDANTS' FIRST AFFIRMATIVE DEFENSE

103.   Plaintiffs fail to set forth a claim upon which relief may be granted, including as to the

facts set forth with regard to Defendants' Counter-Claim, hereinbelow.

104.   The Plaintiff has no damages properly before the Court.

105.   Putting aside the lateness, the missed days, lunch time deductions, break time deductions,

and time lost for changing clothes, parking, as well as Plaintiff's smoking as detailed

hereinbelow in the Defendants' Counter-Claim, the Plaintiff still fails to state a claim.

106.   Giving the Plaintiff the benefit of his calculations, which are not conceded, but assuming

*arguendo*, without conceding the Plaintiff is due overtime at the rate of an additional

$6.00 per hour for 13.5 hours per week, the claim is offset by the loan as set forth in the

Defendants' Counter-Claim hereinbelow.

a.   The Plaintiff claims he worked 10 hours per day for 5 days (50 hours) and 8 hours

on Saturdays (8:00 a.m. to 4:00 p.m.) or 58 hours per week, less 45 minutes per

day  for lunch and breaks, keeping in mind lunch breaks were taken (and paid for

by Defendants, *see* **EXHIBIT "A"**) multiplying 6 days or 58 hours deducting 4.5

hours leaving 53.5 hours per week.

b.   The Plaintiff therefore claims 13.5 hours per week (53.5 - 40) at $6.00 per hour

for the overtime differential or $81 per week.

    c.      The Plaintiff was employed for a total of 78 weeks calculated as:

        i.      In 2016, December 12 until the end of 2016 or 3 weeks;

        ii.     In 2017, 52 weeks;

        iii.    In 2018 until May 31 or 23 weeks.

    d.      Thus, *arguendo*, if the Plaintiff is accurate, he is owed $6,318, however that is without any of the following deductions in that:

        i.      clearly the Plaintiff was not on time every day; and

        ii.     clearly he could not have been required to work 10 hours per day by virtue of

            (1)    the parking stubs (*see* Counter-Claim hereinbelow including the supporting Exhibits, notably, **EXHIBIT E** annexed hereto) and

            (2)    the text messages (*see* Counter-Claim hereinbelow including the supporting Exhibits, notably, **EXHIBITS A**, **B**, **D** and **F**), and

    e.      As stated above even then he was late; and

    f.      Upon information and belief, Plaintiff's cell phone records will show the amount of "break time" on the phone; and

    g.      Upon information and belief he smoked approximately a pack and one-half of cigarettes per day;

    h.      It is clear he stayed late at times working on family members cars. *See* Counter-Claim hereinbelow, including, notably, **EXHIBIT A**.

107.    The loan (*see* Counter-Claim and Exhibits in support thereof, notably, **EXHIBIT C**,

exceeds the amount the Plaintiff could possibly claim to be due and owing.

108. The Plaintiff therefore still owes the Defendants money.

109. As there is no claim, there can be no penalties, nor interest, nor sanctions due the Plaintiff.

110. As such this claim must be dismissed.

## AS AND FOR DEFENDANTS' SECOND AFFIRMATIVE DEFENSE

111. Plaintiff has failed to obtain jurisdiction over the Defendants.

112. Service of process on the defendants was deficient, defective and insufficient as a matter of law.

## AS AND FOR DEFENDANTS' THIRD AFFIRMATIVE DEFENSES

113. The Plaintiff herein has "unclean hands" as detailed herein including but not limited to:

   a.   Failing to disclose the loan as set forth in the Counter-Claim hereinbelow;

   b.   The Plaintiff has materially and falsely misstated the contentions as to the claim that Defendant owner was withholding the tools.

   c.   Failing to disclose the proper hours worked;

   d.   Failing to disclose habitual lateness.

114. The text messages as set forth and discussed in the Counter-Claim hereinbelow clearly show the Plaintiff in no way claims the loan is not genuine, nor due. Furthermore, after Plaintiff quit, the parties were on bad terms.

115. Notably, the Plaintiff failed to even mention the loan in his Complaint.

116. Plaintiff's claim should be dismissed as a matter of Equity.

## AS AND FOR THE DEFENDANTS' COUNTER-CLAIM

## FACTS SET FORTH IN SUPPORT OF COUNTER-CLAIM

117.    The following statements are set forth both in support of the Defendants' Counter-Claim
and Affirmative Defenses, above.

**The Unmentioned Loan to the Plaintiff**:

118.    Plaintiff alleges Defendants improperly and unlawfully withheld and continue to withhold
the tools of his trade as a mechanic, however in accord with the statements of the
Plaintiff, several key facts have been omitted as will be detailed below.

119.    First, the Plaintiff voluntarily quit, as detailed below.

120.    Second, at all times the tools were held by the Defendant owner (hereinafter "Gene"), he
stated he would release the tools in exchange for the Plaintiff making arrangements to
repay the Plaintiff a loan of approximately $8,300 from the Defendant to the Plaintiff and
thus Gene required an "agreement" so that he could get paid back the money: A set of
facts conspicuously omitted in the Plaintiff's rendition though supported by the text
messages, annexed hereto.

121.    Contrary to the Plaintiff's rendition, Defendant Gene did not refuse to return the subject
tools as detailed below, including the supporting Text Exhibits, notably, **EXHIBIT "B"**
annexed hereto.

122.    Defendant Gene simply wanted an agreement as to the money he had loaned the Plaintiff,
which was $8,314.45, although, upon information and belief, it may have been
approximately $300 more that was simply not written down. The records of the $8,314.45
were kept in a small notebook. *See* **EXHIBIT "C"** annexed hereto.

123.     Though the loan is validated by the Plaintiff's own text messages, at all times the Plaintiff

         has refused to repay the loan.

**The Tools Were Not Withheld by Defendant Gene**:

124.     In support of the above, annexed hereto is Defendants' **EXHIBIT B**, text messages

         stating that:

         a.      Gene would not withhold his tools, but wanted an ". . .agreement/payment plan"

                 for the money ". . .the money [Gene] lent [Plaintiff] to do your motor on your

                 Subaru". (*See* last bubble of **EXHIBIT B**).

         b.      The amount loaned was stated as $8,300 in the texts, though in reality is, upon

                 information and belief $8,314.45 and likely approximately $300 more. *See*

                 **EXHIBIT B**; and

         c.      At all times the Plaintiff could have taken his tools, so long as an agreement was

                 written as to "hoe" [sic - how] [Gene] will get paid back". (*See* **EXHIBIT B**.)

125.     Thus, in the text messages, it is clear that the Plaintiff not only does not dispute the claim

         that money is owed to Gene, but indeed makes no statement as to the amount of $8,300 as

         claimed, upon information and belief because the Plaintiff recognized that Defendant

         Gene was due and owed more money. (*See* **EXHIBIT B** as annexed.)

126.     At no time does the Plaintiff indicate in any way that a document to protect Gene would

         be in order, thus, upon information and belief, this is a scheme of the Plaintiff to avoid

         paying Gene the borrowed money in addition to inaccurate claims as to hours worked as

         further detailed hereinbelow.

127.     Upon information and belief, the Plaintiff called the police and upon the police arriving,

upon information and belief, when Gene explained the situation, the police told the Plaintiff it was a civil matter, not a police matter and as such could take no action.

128.    The "back story", and accompanying additional Exhibits, will further elucidate the inconsistencies of the Plaintiff's rendition and claims.

**Hours Worked**:

129.    The Plaintiff was employed by the Defendants as an auto mechanic.

130.    Upon information and belief, the Plaintiff was constantly late, and late for the hours of 9:00 a.m. to 6:00 p.m., not 8 a.m. to 6 p.m. as the Plaintiff alleges.

131.    As such, the statements as to the Plaintiff's work hours are therefore false.

132.    The Defendants hereby allege the Plaintiff was supposed to work from 9:00 a.m. to 6 p.m., Monday through Friday and 9:00 a.m. to 4:00 p.m. on Saturday.

133.    The Plaintiff alleges his hours to have been 8:00 a.m. to 6:00 p.m., Monday through Friday and 8 a.m. to 4:00 p.m. on Saturdays.  As set forth herein the Plaintiff's contentions are inaccurate as validated by the text messages of the Plaintiff.

134.    The Plaintiff was supposed to start work at 9:00 a.m. and upon information and belief was perpetually late.

135.    Upon information and belief, the Plaintiff was of the belief that he could simply stay later, but such is not the case, in that not only do people anticipate their car being ready upon their return after their own work day, but further, parts stores close and parts therefore are not as readily available.

136.    As to the availability of auto parts after 6:00 p.m., by way of example, two stores are open later (Tarrytown Road and Elmsford), but they are substantially farther than the local

parts store in White Plains which closes at 6:00, and because the Defendants do substantial business, the White Plains parts store caters to the Defendants, at least to some degree.

137. Additionally, where a second man is needed that individual wants to leave at the end of his own work day, rather than stay to assist because the Plaintiff did not arrive until substantially after the work day began and not even consistently at that.

138. Additionally the second man is now staying later and potentially creating an overtime situation for the Defendants, simply because the Plaintiff was not on time *ab initio*.

139. Additionally, the Plaintiff did stay to work on his own car for family and friends, and such is of course not compensable by the Defendants. By way of example, *see* text dated May 15, 2016, wherein at 6:32 p.m. the Plaintiff had stayed late to change the oil in his sister's Honda (**EXHIBIT A**), *and see* text dated November 29, 2016, about having another car towed to the shop (**EXHIBIT "D"**).

140. Thus, while the Plaintiff may allege he stayed after 6:00 p.m., to the extent he did it was, upon information and belief, for working on friends' or family's cars or other side jobs.

141. There came a time when Plaintiff had his Subaru at the station disabled, and had a second car or daily driver which parked at the White Plains public lot behind the station.

142. Thus, in support of the above statements, Defendants submit some of the White Plains Parking Authority parking stubs for the vehicle of the Plaintiff, annexed hereto as **EXHIBIT "E"**, which came to exist in the following manner.

143.   The Plaintiff had a Subaru automobile as to which he wanted to "supe"[1] up, and thus removed the engine and sent it to be rebuilt at a speciality shop.

144.   The engine removal was done by the Plaintiff, at the Defendants' facility, but after hours, and was non-compensable time, but that left the Subaru inoperable.

145.   Gene allowed the Subaru to be pushed to a parking spot, but upon information and belief the Plaintiff did do other work on the vehicle while it sat, as would be expected.

146.   The Plaintiff would then drive another vehicle to work, however Gene fairly quickly made it clear that his facility, which is not that large, cannot accommodate, nor would he allow any employee, including the Plaintiff, to park two cars at the shop, in this case the daily driver and the Subaru sans the engine.

147.   The Plaintiff then availed himself of the White Plains public parking lot immediately behind the gas station for the daily driver. As such he had to pay for parking and generated parking stubs.

148.   The Plaintiff, upon information and belief came to decide that Gene should be paying for this parking, and as such left some the receipts for Gene.

149.   As stated, upon information and belief Gene refused to pay for the parking of the Plaintiff as Gene provided him with a single spot which was occupied by the Subaru.

150.   Upon information and belief this increased friction and tension and more likely than not led to the instant matter, at least in part, but whatever the reason the parking stubs are most elucidating, though keeping in mind such are far from a full complement.

---

[1] Upon information and belief, a term used to increase the cars power or handling, making it a "super" or "suped up" car.

151.   As the parking stubs are reviewed it must be kept in mind that the Plaintiff would of

necessity need to arrive, gather up anything from his car, pay for parking at the public lot,

located immediately behind the gas station, and then traverse around the gates and enter

the gas station.

152.   A review of the parking stubs (**EXHIBIT E**) reveals the following:

| Date | Time Arrived | Expiration Time | Hours Paid |
|------|--------------|-----------------|------------|
| Mar 2, 2018 | 9:24 a.m. | 7:24 p.m. | 10 hours |
| Apr 28, 2018 | 8:38 a.m. | 3:38 p.m. | 7 hours |
| May 4, 2018 | 10:58 a.m. | 5:58 p.m. | 7 hours |
| May 8, 2018 | 8:42 a.m | 6:42 p.m. | 9 hours |
| May 25, 2018 | 10:00 a.m. | 7:00 p.m. | 9 hours |

153.   For starters, if the Plaintiff was to arrive at 8:00 a.m. he was constantly late.

154.   If the Plaintiff's start time was 9:00 a.m. as Defendant alleges, he was on time for 2 of the

5 days indicated above.

155.   The Plaintiff, when paying for parking, paid for 7 hours on two of the five days for which

the stubs could be located, 9 hours on two others and 10 on the fifth day.

156.   The Plaintiff claims he worked more than 10 hours on weekdays, yet paid for 10 hours of

parking on one day and less on every other.

157.   As detailed herein, paying for 9 hours of parking by its' nature means the Plaintiff is

working less than 9 hours, allowing for the facts as indicated herein.

158.   Thus, based upon the parking stub records:

a.      The Plaintiff failed to arrive on time at least from time to time depending upon

what start time was required.

b.      On days when the Plaintiff paid for 9 hours, and assuming as is the contention of the Plaintiff he was to work 9 hours, by paying for 9 hours the Plaintiff allowed no time for paying for parking at the machine, gathering in any belongings, traversing the distance to the gas station and then arriving for work, and then returning as detailed below.

c.      On days when the Plaintiff paid for 9 hours of parking, he therefore anticipated he would be finished, cleaned up and back at his car before the expiration of 9 hours.

d.      No allowance is stated as to time for changing clothes on the occasions when the Plaintiff would do so.

e.      Paragraphs (a) and (b) herein above mean Plaintiff cannot claim to have been working 9 hours on days he paid for 9 hours to park.

159.    Additionally, upon information and belief the Plaintiff was routinely late, but late for the 9:00 a.m. start time for his work day, not 8:00 a.m. as Plaintiff alleges.

160.    For one of the work days, specifically February 3, 2017, Plaintiff, who lived, upon information and belief, about a 10-15 minute drive time from the gas station, came down to his car a few minutes before 9:00 a.m. to leave and drive to the station for 9:00 a.m. only to find his battery was dead. *See* **EXHIBIT** "F". Notably, he is texting at 8:51 a.m. which is consistent with the 9:00 a.m. start time alleged by the Defendants, though upon information and belief would have been a few minutes late that day regardless of the battery issue.

161.    If the Plaintiff, as he alleges was to start at 8:00 a.m., then he would of necessity have headed to his car before 8:00 a.m., but then waited and texted Gene to state he was

running late because of a dead battery until 8:51. *See* **EXHIBIT F.**

162.   The Plaintiff could of necessity not expect to work 9 hours if he paid for 9 hours, let alone 10 hours.

163.   The Plaintiff upon arriving to park in the public lot, would of necessity loose several more minutes paying for parking at the machine, gathering his belongings, and traversing the distance to arrive for work.

164.   Thus, if the Plaintiff was due at 8:00 a.m and had to park in the public lot, he should have arrived at approximately 7:50 a.m., parked and then proceeded as above, specifically then proceed to the machine, paid, and then reported for work.

165.   The Plaintiff states he was forced to work 10 hours, but when he paid for 9 hours that means he left the car, arrived at the station, worked, finished, cleaned up and intended to be back to his car before the expiration of 9 hours: Clearly impossible.

166.   Paying for 9 hours of parking would of necessity not even allow the Plaintiff to work for 9 hours.

167.   The Plaintiff therefore was not working 10 hours as alleged, nor even actually working 9 hours on the days he paid for 9 hours, meaning assuming he finished the job or stopped the job, he still had to clean up, and get back to his car within the 9 hour time frame to avoid a potential  ticket.

168.   The above speaks nothing as to the time expended changing in and out of work clothes, which the Plaintiff did from time to time but not every day though needless to say, when the Plaintiff arrived in the morning he could not know what might occur which would cause his clothes to become extremely soiled, as compared to a regular work day where

he would leave while still in his days work clothes.

169.   For purposes of minimum wage and over-time purposes, the Fair Labor Standards Act (FLSA) Section 203(o) excludes from the number of "hours worked" the time expended "changing clothes" in cases such as this, noting that there is no reason a mechanic must change clothes and upon information and belief they test drive cars without changing clothes.

170.   Any such time is wholly unaccounted for in an allotted time of payment for parking of 9 hours.

171.   To allow for the time necessary to work 9 hours as well as:

   a.   Arriving and getting a spot in the public parking lot behind the gas station; and

   b.   Going and paying for parking; and/or

   c.   Returning to the vehicle and gathering up any items including sometimes personal tools which, upon information and belief, were used for side or other jobs; and

   d.   Going to the gas station and reporting for work; and

   e.   At times changing into work clothes;

   AND THEN AT THE END OF THE WORK DAY:

   f.   Cleaning up; and

   g.   At least at times, changing out of the days work clothes into clean clothes; and

   h.   Gathering all items up including sometimes personal tools which, upon information and belief, were used for side or other jobs; and

   i.   Leaving the gas station and traversing to the car in the public lot: and therefore;

   All totaled upon information and belief the above is at least an extra 20 minutes,

depending upon where a person parked, any people on line for the parking machine, how much (if any items) had to be gathered up and transported, whether or not clothes were changed on a given day and similar such variables.

172.   Based upon the above, and upon information and belief on a day where the Plaintiff paid for 9 hours he could not have been working 9 hours.

173.   Notably, out of the 5 receipts located to date,

    a.   two were paid for 9 hours which is inconsistent with a 9 hour work day,

    b.   two were paid for 7 hours, which clearly is inconsistent with the claims of the Plaintiff, and

    c.   only one was for 10 hours which would be consistent with the claims of the Plaintiff, except to the extent that 10 hours of work time means, of necessity, 11 hours for parking in the public lot was necessary for all of the reasons as set forth and detailed hereinabove.

174.   As to the 10 hour day, there were, of course, days when the Plaintiff worked on his own vehicles or friends or family members or "side jobs" such as his sisters oil change as detailed above (*see* **EXHIBITS A** and **D**).

**The "Restore the Engine Party"**:

175.   Upon information and belief the Plaintiff quit after having an argument over the following matters:

    a.   The above perpetual lateness;

    b.   The Plaintiff constantly smoking, including in the garage itself against Gene's order due to the hazard, to which the Plaintiff ignored; and

c.      The yelling and screaming by the Plaintiff; and

d.      The attempt by the Plaintiff to avoid paying the money due Gene; and

e.      The repeated cell phone use by the Plaintiff, which contention upon information and belief will be validated by the Plaintiffs cell phone records; and

f.      The Plaintiff's poor work habits and judgment, including a "Restore the Engine Party" for his Subaru.

176.    As stated above, the engine had been removed from the Subaru.

177.    Upon the return of the engine after being suped up, the Plaintiff posted a "Restore the Engine Party" at Gene's Gas Station for April 26th (*see* **EXHIBIT "G"**) without permission nor authority for such a party.

178.    Upon information and belief not only was the Subaru was not restored to proper running condition on that date, but further the "Party" was not with permission nor authority of Gene and violated at least nothing less than the insurance policy of Gene and exposed Gene to nothing less than a potential liability fiasco had someone been injured.

179.    To be clear, there is no denial that Gene was advised that the Plaintiff intended to restore the engine that Saturday night, however upon information and belief no statement was ever made to Gene as to inviting people via Facebook for a "Party".

180.    Such created a liability exposure to Gene which upon information and belief was not atypical of the actions of the Plaintiff, and all such acts led to the friction as to which he quit.

**The Incident as to the Eye Injury:**

181.    As to the day the Plaintiff quit on May 31, 2018, Plaintiff alleged he had suffered metal to

his eye 2 days prior, May 29, 2018, and had been to the emergency room on May 30, 2018. Such led to the text message of **EXHIBIT B** as to him having "two eyes".

182.    Upon being so advised on May 31, 2018, at first, upon information and belief, nothing struck Gene as inconsistent at least at the moment, and certainly metal to the eye is a hazard of any auto mechanic, however, upon information and belief, when the Plaintiff alleged this, it then began to strike Gene as wrong.

183.    Upon information and belief, and to the best of his recollection at that moment, the Plaintiff had not worked on anything on May 29, 2018 which should have caused metal to get into his eye but that was now 2 days prior to the final day, May 31, 2018. Now that is not to say it could not have happened, nor that Gene knew every problem the Plaintiff might have run into in order to get a job done and metal to his eye could well have happened, but, upon information and belief, it struck Gene as odd.

184.    Additionally, upon information and belief, when Plaintiff had left that prior night of May 29, 2018, he had not complained.

185.    Additionally, upon information and belief, the last night the Plaintiff had left he had taken some tools to work on a friends car which was stuck, and that was certainly not unusual, however, while injury to an eye can happen at any time on any job, it is less likely to happen using a lift at a gas station as the mechanic stands vertically under the car, as compared to working on a stuck car which is jacked up and the mechanic is on his back.

186.    Upon information and belief, Gene, recalling Plaintiff having said he was to work on a friend's car the prior night, upon information and belief started questioning the Plaintiff as to the work he had done after he had left the gas station, and the fact he had not

complained nor reported any incident to his eye before leaving, and what he had been working on at the gas station which caused the metal, as certainly it would seem more natural any such incident was toward the end of the day, or he would have complained the balance of the day, which he had not.

187. Upon information and belief, at that point the Plaintiff accused Gene of not believing him, as to which Gene admittedly was at least vacillating, and the argument became heated and the Plaintiff stormed off.

188. The Plaintiff voluntarily quit.

189. The Plaintiff was properly paid.

190. The tools were not withheld.

## AS AND FOR DEFENDANTS' COUNTER-CLAIM

191. Defendants repeat and restate each and every statement made heretofore with the same force and effect as if fully set forth at length once again.

192. This Court has and Defendants seek, the supplemental jurisdiction of the Court as to the Counter-claim including such pursuant to 28 U.S.C. § 1367.

193. This Court has and Defendants seek, the ancillary jurisdiction of the Court.

194. This Court has and Defendants seek, the ancillary jurisdiction of this Court as to the Counter-Claim including such under FRCP 14 and 28 U.S.C. § 1367.

195. Based upon the statements of the Plaintiff himself as set forth in the text messages, Defendants are due the sum of $8,314.45.

196. Plaintiff has breached the terms of the agreement as to the loan and repayment.

197. Such constitutes breach of contract.

198.    The Defendants have duly demanded payment.

199.    No payment has been made.

200.    Defendants are therefore due the principal and interest and costs.

201.    The Defendants are additionally due New York State statutory interest at 9% on the unpaid

loan.

**WHEREFORE,** Defendants requests the dismissal of the Plaintiff's case in the entirety and

judgment as against the Plaintiffs as detailed:

(1)     Dismissing the Complaint of the Plaintiff in its entirety;

(2)     Judgment against the Plaintiff on the Counter-claim; and

(3)     Awarding legal fees and costs with respect to the defense of this matter; and

(4)     For such other and further relief as this Court deems just and proper under the

circumstances.

Dated: August 10, 2018
        White Plains, New York

JASNE & FLORIO, L.L.P.
*Attorneys for Defendants*

By Hugh G. Jasne, Esq. (HGJ-5041)
30 Glenn Street, Suite 103
White Plains, New York 10603
(914) 997-1212

To:     Jordan El-Hag, Esq.
        *Attorney for Plaintiff*
        El-Hag & Associates, P.C.
        777 Westchester Ave, Suite 101
        White Plains, NY 10604

# VERIFICATION

STATE OF NEW YORK        )
                                  ) ss.:
COUNTY OF WESTCHESTER   )

SOKOL "GENE" MJESHTRI, being duly sworn, deposes and says:

That I am a Defendant in the within action and I have read the foregoing Answer with Counterclaim(s) and Affirmative Defenses, and know the contents thereof, and the same is true to my own knowledge, except as to those matters therein stated to be alleged upon information and belief, and that as to those matters, I believe such to be true.

SOKOL "GENE" MJESHTRI

Sworn to before me this
*10* day of August, 2018

Notary Public

HUGH G. JASNE
Notary Public, State of New York
No. 02JA4962433
Qualified in Westchester County
Commission Expires February 20, 20__